**2014-1827**

# United States Court of Appeals
# for the Federal Circuit

GOOGLE INC.,

*Plaintiff – Appellee,*

*v.*

BENEFICIAL INNOVATIONS, INC.,

*Plaintiff / Third Party Defendant – Appellant,*

v.

ADVANCE PUBLICATIONS, INC., ALM MEDIA PROPERTIES, LLC, AMAZON.COM, INC., AMERICAN MEDIA, INC., AUTOTRADER.COM, INC., DELL, INC., DEMAND MEDIA, INC., EXPEDIA, INC., RODALE, INC., SCRIPPS INTERACTIVE LLC, VIACOM, INC., VILLAGE VOICE MEDIA HOLDINGS, LLC, SCRIPPS NETWORKS LLC,

*Defendants.*

*Appeal from the United States District Court for the Eastern District of Texas in case no. 2:11-cv-229-JRG-RSP, Judge Rodney Gilstrap.*

## BRIEF OF APPELLEE GOOGLE INC.

STEVEN A. HIRSCH
CHRISTA M. ANDERSON
JENNIFER A. HUBER
JOHN C. BOSTIC
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111
(415) 391-5400

*Attorneys for Appellee*
*GOOGLE INC.*

April 27, 2015

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

*Google Inc. v. Beneficial Innovations, Inc,* 2014-1827

## CERTIFICATE OF INTEREST

Counsel for the Appellee, GOOGLE INC. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

GOOGLE INC.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

GOOGLE INC.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

KEKER & VAN NEST LLP
    Christa M. Anderson
    Steven A. Hirsch
    Jennifer A. Huber
    John Bostic

KILPATRICK TOWNSEND & STOCKTON LLP – Atlanta
    Jennifer L. Blackburn
    David C. Holloway

POTTER MINTON, A PROFESSIONAL CORPORATION
    John Frederick Bufe
    Allen Franklin Gardner
    Michael E. Jones

FISH & RICHARDSON PC – Atlanta
    Elizabeth Danielle Thompson Williams


Dated: April 27, 2015            /s/ Steven A. Hirsch
                                 Steven A. Hirsch
                                 Keker & Van Nest LLP
                                 Attorney for Appellee
                                 GOOGLE INC.

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES ................................................................... vi

STATEMENT OF RELATED CASES ..................................................... ix

I. INTRODUCTION ......................................................................... 1

II. STATEMENT OF THE ISSUES ................................................... 7

III. STATEMENT OF THE FACTS AND THE CASE ......................... 7

    A. As part of a settlement, Beneficial granted Google and its customers a license under the '702 and '943 patents. ...... 7

    B. Beneficial then sued Google's customers for infringing the licensed patents. .......................................................... 13

    C. Google intervened, alleging that Beneficial had breached the settlement agreement by suing Google's customers for infringing the licensed patents. .................... 16

    D. The jury found for Google, and the district court denied Beneficial's pre- and post-verdict JMOL motion. ............... 19

IV. SUMMARY OF THE ARGUMENT ............................................. 21

V. ARGUMENT ............................................................................. 24

    A. Beneficial's own assertions provided substantial evidence that Google's customers directly infringed the asserted patents. ................................................................. 26

        1. The allegations in Beneficial's complaint were admissions that Google's customers infringed the licensed patents. .......................................................... 33

2. Beneficial's infringement contentions and discovery responses provided additional evidence that Google's customers infringed the licensed patents.........................38

B. Substantial evidence supported the finding that Google contributed to its customers' infringement under Beneficial's own theories, triggering the protections of the customer license in the 2010 settlement agreement.....43

1. Google knowingly supplied DoubleClick to the defendant customers to use in a system that infringed, under Beneficial's theory of infringement......44

2. DoubleClick had no substantial non-infringing uses under Beneficial's theory of infringement........................47

(a) Serving ads to users who have disabled cookies was not a substantial non-infringing use. .................48

(b) Serving ads on a website that does not store user identification was not a substantial non-infringing use. ............................................................50

(c) Beneficial waived any claim that serving non-concurrent ads is a substantial non-infringing use—but in any event, it isn't. ...................................51

C. Substantial evidence supported the finding that Google induced its customers' infringement of the asserted patents. ...............................................................................53

1. Google knew about the asserted patents and knowingly induced allegedly infringing acts...................54

2. Google had the requisite intent to encourage infringement. ...................................................................58

VI. CONCLUSION ...............................................................................61

CERTIFICATE OF SERVICE.................................................................63

iv

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS...................................................................64

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Antonius v. Spalding & Evenflo Cos., Inc.,*
  275 F.3d 1066 (Fed. Cir. 2002) ........................................................... 37

*Armour v. Knowles,*
  512 F.3d 147 (5th Cir. 2007) ................................................................ 39

*Borel v. U.S. Cas. Co.,*
  233 F.2d 385 (5th Cir. 1956) ................................................................ 29

*Bradley v. Allstate Ins. Co.,*
  620 F.3d 509 (5th Cir. 2010) ................................................................ 38

*Broussard v. State Farm Fire & Cas. Co.,*
  523 F.3d 618 (5th Cir. 2008) ................................................................ 25

*Commil USA, LLC v. Cisco Sys., Inc.,*
  720 F.3d 1361 (Fed. Cir. 2013) ........................................................... 60

*Cont'l Ins. Co. of N.Y. v. Sherman,*
  439 F.2d 1294 (5th Cir. 1971) .............................................................. 29

*Evans Cooling Sys., Inc. v. Gen. Motors Corp.,*
  125 F.3d 1448 (Fed. Cir. 1997) ................................. 5, 22, 28, 30, 34, 40

*Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.,*
  394 F.3d 1368 (Fed. Cir. 2005) ........................................................... 58

*Fujitsu Ltd. v. Netgear Inc.,*
  620 F.3d 1321 (Fed. Cir. 2010) ................................................. 49, 50, 60

*Global–Tech Appliances, Inc. v. SEB S.A.,*
  131 S. Ct. 2060 (2011) ......................................................................... 55

*Golden Blount, Inc. v. Robert H. Peterson Co.,*
  438 F.3d 1354 (Fed. Cir. 2006) ..................................................... 44, 48

*Hardy v. Johns-Manville Sales Corp.*,
    851 F.2d 742 (5th Cir. 1988)......................................................22, 29

*Hilgraeve Corp. v. Symantec Corp.*,
    265 F.3d 1336 (Fed. Cir. 2001) .........................................................51

*Hobbs v. Alcoa, Inc.*,
    501 F.3d 395 (5th Cir. 2007).......................................................39, 56

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ...........................................................52

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ..........................................................35

*Intel Corp. v. VIA Techs., Inc.*,
    319 F.3d 1357 (Fed. Cir. 2003) ..........................................................32

*Keipfer v. Beller*,
    944 F.2d 1213 (5th Cir. 1991).......................................................30, 34

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
    688 F.3d 1342 (Fed. Cir. 2012) ....................................................24, 25

*Kohler v. Jacobs*,
    138 F.2d 440 (5th Cir. 1943).............................................................38

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
    714 F.3d 1277 (Fed. Cir. 2013) ..........................................................36

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
    449 F.3d 1209 (Fed. Cir. 2006) ..........................................................26

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ..........................................................43

*Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004) ....................................................23, 26

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) ....................................................39, 56

*SynQor, Inc. v. Artesyn Techs., Inc.,*
   709 F.3d 1365 (Fed. Cir. 2013) ........................................................ 24

*United Paperworkers Int'l Union AFL-CIO, CLC v. Champion Int'l*
   *Corp.,*
   908 F.2d 1252 (5th Cir. 1990) .................................................... 39, 56

*Vanmoor v. Wal-Mart Stores, Inc.,*
   201 F.3d 1363 (Fed. Cir. 2000) ........................ 5, 22, 28, 30, 31, 34, 41

*Vita-Mix Corp v. Basic Holding, Inc.,*
   581 F.3d 1317 (Fed. Cir. 2009) .............................. 48, 49, 50, 51, 54, 58

*z4 Techs., Inc. v. Microsoft Corp.,*
   507 F.3d 1340 (Fed. Cir. 2007) ........................................................ 49

## Statutes

35 U.S.C. § 102 ...................................................................................... 27

35 U.S.C. § 271 .......................................................................... 31, 42, 43

## Rules

FED. R. CIV. P. 8 .......................................................................... 31, 35, 36

FED. R. CIV. P. 11 .............................................................................. 36, 37

FED. R. CIV. P. 36 ...................................................................... 29, 30, 34, 36

FED. R. CIV. P. 50 ........................................................................ 19, 20, 24

## Other Authorities

5A WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1334 (3d ed. 2004) .... 37

## STATEMENT OF RELATED CASES

Under Federal Circuit Rule 47.5, third-party-plaintiff and appellee Google Inc. states that:

(a) there have been no other previous appeals in this case; and

(b) there are no cases pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

# I.    INTRODUCTION

Beneficial licensed Google's customers to practice the asserted patents and then, just a few months later, sued several of them for infringing those patents. Google intervened to protect its customers. At the trial of Google's complaint-in-intervention and now on appeal, Beneficial's attempts to justify its behavior have only highlighted the inconsistencies in its position.

On the one hand, Beneficial sued Google's customers on the theory that their use of Google's DoubleClick product infringed two of Beneficial's patents. Beneficial repeatedly alleged in complaints, discovery responses, and infringement contentions that Google customers infringed by using DoubleClick to serve advertisements alongside service-related information on their websites.

On the other hand, Beneficial argued at trial, in its JMOL motions, and now on appeal that there was *no substantial evidence* that the infringement that it repeatedly alleged—and that supposedly prompted it to file this lawsuit in the first place—ever occurred. In

1

short, Beneficial now claims that there was no substantial evidence that the central allegation of its lawsuit—this lawsuit—was true.

How did this remarkable exercise in self-contradiction come to pass? It happened like this: Beneficial sued Google in 2007 and 2009, accusing Google's advertising systems of infringing the patents at issue. In 2010, Google and Beneficial entered into a settlement agreement that included a perpetual license to the asserted patents. Besides granting Google a broad license, the settlement agreement licensed Google's customers whenever they used the patented technology in a manner that "would constitute direct or indirect infringement of a claim of the Licensed Patents by [Google] but for [the] license." Beneficial thus licensed away its right to bring the type of infringement claim it made in this suit.

Only seven months after granting that license, Google began receiving complaints from customers who had been sued by Beneficial. A882:16–18, 903:7–904:23, 1901–1904. When Google learned that Beneficial had violated the settlement agreement by suing Google's customers for using DoubleClick to serve advertisements on their

2

websites, it reached out to remind Beneficial of the settlement agreement and encourage it to drop any improper claims. A884:8-885:3. But Beneficial refused to honor the settlement agreement. Google then intervened in this suit to enforce its license and protect its customers from further harassment.

Beneficial then shifted into reverse, trying to change its *infringement* claims into *non-infringement* claims—because it knew that continuing to allege and prove infringement would trigger the customer license and thus render Beneficial liable to Google for breaching the settlement agreement. After settling its claims against some of Google's customers, Beneficial tried to take back everything it had said before. In particular, it claimed—and now asserts on appeal—that Google could not rely on Beneficial's repeated and insistent claims of infringement to help prove "direct or indirect infringement of a claim of the Licensed Patents by [Google]"—the condition that triggered the protections of the customer license.

The jury disagreed. It found Beneficial liable for breaching the license and settlement agreement by suing Google's customers for doing exactly what Beneficial had licensed them to do.

The district court also disagreed with Beneficial's arguments. It denied Beneficial's pre- and post-verdict JMOL motions, which argued that Beneficial's own allegations were meaningless, that Google had failed to prove its own infringement, and that Google had thus failed to prove breach of the license and settlement agreement.

On appeal, Beneficial again asserts that the jury was not entitled to rely on Beneficial's own infringement allegations to determine whether this was, in fact, the very sort of claim that Beneficial had agreed never to bring again. Beneficial asserts that argument despite this Court's contrary holdings that infringement allegations set forth in a plaintiff's pleadings and discovery responses may function as party admissions and thus as competent evidence to establish infringement where a defendant needs to establish its own infringement to trigger a defense. This occurs, for example, when a defendant must prove that it practiced the patented invention more than one year before the patent

application was filed in order to invoke the on-sale bar. *See Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1450–51 (Fed. Cir. 1997); *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000).

Here, as in *Evans Cooling* and *Vanmoor*, the jury and district court properly held Beneficial to its own infringement allegations (and other statements) when deciding whether those allegations triggered the customers' license-based defense. Moreover, even apart from Beneficial's own allegations, the jury heard abundant evidence that supported a finding of direct and indirect infringement sufficient to trigger Beneficial's license obligations under Beneficial's own liability theories.

Fundamentally, this appeal tests whether parties are free to try on and then cast aside their own core allegations on a whim, like a shopper trying on clothes in a changing room. Beneficial was happy to cry "infringement" when doing so helped it to pressure Google's customers into settlements. But when Google intervened to point out that those very allegations triggered the customers' license protections,

Beneficial tried to run away from its own pleadings and admissions, insisting that they lacked any force or effect. The law did not require the jury and district court to countenance such tactics.

This appeal also poses a stark choice between interpreting a settlement agreement to carry out its evident purpose of foreclosing further litigation or, alternatively, in a manner that renders that agreement toothless and incapable of protecting the parties licensed under that agreement. Under Beneficial's reading of the customer license, Google and its customers were in the exact same position the day after being granted the license that they had been in the day before—namely, obliged to defend themselves in full-blown litigation combat whenever Beneficial chose to renew hostilities. But the whole point of the settlement and license was to buy *peace*—to immunize Google and its customers not merely from infringement *liability* but also from being dragged through additional costly and burdensome *litigation* over the same patents. Under Beneficial's interpretation, the license would be effectively meaningless. Under Google's, the license serves the purpose that the parties intended.

The judgment was correct and should be affirmed in its entirety.

## II.    STATEMENT OF THE ISSUES

1.    May a jury rely on a plaintiff's own pleadings, discovery responses, and interrogatory contentions as evidence that the lawsuit is one of the very type that the plaintiff, in a prior settlement agreement, promised never to bring again?

2.    Was the jury's verdict that Beneficial breached its 2010 settlement agreement with Google supported by substantial evidence— including (but not limited to) Beneficial's own pleadings, discovery responses, and infringement contentions?

## III.    STATEMENT OF THE FACTS AND THE CASE

### A.    As part of a settlement, Beneficial granted Google and its customers a license under the '702 and '943 patents.

Beneficial is a non-practicing entity that owns U.S. Patent Nos. 6,712,702 and 7,496,943 (collectively, "the asserted patents"). These patents claim devices and methods for providing advertising information on websites. A1630–1675, 1687–1739. The asserted patent claims disclose systems and methods for combining advertising-related

7

and service-related information and for delivering that combined information to a user in response to a request for a service on a network.

For example, independent claim 53 of the '702 patent recites an apparatus for a service on a communications network that comprises a store for storing user information accessible by a network node, elements necessary to transmit that information, elements for recognizing a user who has visited a website before, and "programmatic elements for combining advertising related information with service related information to obtain a resulting combination" in a format that can be transmitted to the user across the network. A1674. This results in a display of advertising information related to a purchase of a product or service "occurring concurrently" with a display of service information. A1674. According to inventor Sheldon Goldberg, this combination of advertising- and service-related information on one website is the invention's "distinguishing" feature. A1080.

Google's DoubleClick product is a collection of proprietary software and databases that provides a platform for Google's customers

to present advertisements on their websites. A865:17–866:11. DoubleClick allows website publishers to focus on their own content while Google's software helps select and serve advertising alongside that content. A866:13–20, A961:17–964:25. Website publishers can use DoubleClick to specify where advertising will appear on their websites and who will view which ads. A970:19–971:24, 974:6–975:6. To accomplish this, website publishers follow Google's instructions to place a piece of code called an "ad tag" into the code for their webpage. A971:10–19. The ad tag specifies where on the page the ad will appear and what type of ad will be presented. A971:10–974:5. DoubleClick also can track which ads have been served to which users. This ability relies on "cookies"—small portions of text stored by a user's browser, that allow websites to identify users who have visited before. A975:15–976:20. The DoubleClick cookie is a unique identifier added to each browser whenever an ad is served. The cookie is then passed back to the DoubleClick ad server every time there is a request to serve an ad to a given user. A977:14–978:17.

Each of these features of DoubleClick also was essential to Beneficial's claims that the asserted patents were infringed. A1905–2150.[1]

In 2007, Beneficial sued Google and others for infringing the '702 patent. Beneficial's infringement allegations were based on Google's use of DoubleClick to serve ads on Google's own websites. A335–342. In 2009, Beneficial sued Google for infringing the '943 patent. A860:5–16. Both suits alleged that Google had infringed the patents both directly and indirectly. For example, in its 2007 complaint, Beneficial alleged that Google had "infringed, contributed to the infringement, or induced others to infringe" the '702 patent. A338.

As required by Federal Rule of Civil Procedure 11, both complaints were signed by Beneficial's attorneys, thereby certifying

---

[1] This brief shows that there was sufficient evidence to find that Google's customers infringed Beneficial's patents directly, and that Google infringed them indirectly, according to Beneficial's own theory of infringement. Wherever this brief makes any statement that there was sufficient trial evidence to support those findings, those statements are intended to be qualified by the fact that the findings were made according to Beneficial's own theory of infringement. This footnote is intended to eliminate the need to repeat that qualification over and over throughout the brief.

10

that "to the best of [their] knowledge, information, and belief, formed

after an inquiry reasonable under the circumstances," the factual

contentions contained therein had "evidentiary support or, if specifically

so identified, . . . likely [would] have evidentiary support after a

reasonable opportunity for further investigation or discovery."

The 2007 and 2009 lawsuits proceeded to discovery, with

Beneficial disclosing detailed explanations of how Google's ad products

infringed Beneficial's patents. Beneficial's infringement contentions

explained its specific infringement theories in detail, describing how

Google and its customers met each limitation of the asserted claim.

A1742, 1752–1753, 1762–1850.

Ultimately, the parties settled the 2007 and 2009 lawsuits, and

none of Beneficial's claims were tried. A305–311. Under the settlement

agreement, Beneficial agreed to dismiss both suits against Google and

to grant Google a perpetual license to the asserted patents. A306–307.

Because Beneficial's allegations also applied to Google "Partners"—

Google customers that use Google's ad-serving products—the agreement

granted them a license as well, to the extent that their use of the

inventions also would constitute direct or indirect infringement by

Google but for the license:

> Beneficial and its Affiliates grant a worldwide, royalty-free, non-exclusive, non-transferable . . . fully paid up, perpetual license under the Licensed Patents to . . . [Google's] past, current and future Partners, whether direct or indirect, but only to the extent of that Partner's role in making, having made, using, selling offering for sale, or importing any products or services of [Google] and only *to the extent such act by such Partner would constitute direct or indirect infringement of a claim of the Licensed Patents by [Google] but for this license.*

A306 (emphasis added). A Google customer was not licensed "simply

because the customer uses a product or service supplied by [Google] if

such use does not constitute direct or indirect infringement of the

Licensed Patents by [Google]." A306.

The settlement agreement stated that it was intended "to settle

and resolve all differences and disputes that exist or may exist between

[Beneficial and Google]." A305. Google was not required to admit

infringement or liability to enjoy the benefits of this license; the

Agreement stated that "[n]othing in this Agreement shall constitute an

admission of patent infringement, validity or enforceability by Google."

A310–311. Instead, the agreement was "merely the resolution of

12

disputed charges of patent infringement by agreement." A310–311.

Google paid Beneficial $2.45 million for the license. A307.

## B.    Beneficial then sued Google's customers for infringing the licensed patents.

Only five months after settling the 2007 and 2009 suits against

Google, Beneficial breached the settlement agreement by filing

infringement claims against several of Google's customers. A69.

Beneficial's complaint alleged that each of the defendants had

"infringed, contributed to the infringement, or induced others to

infringe [Beneficial's patents] . . . by using the method(s) claimed in [the

patents] or by contributing to or inducing others to use the claimed

method(s)." A72, 75. The complaint also provided a non-exclusive list of

the defendants' websites that allegedly infringed Beneficial's patents.

A72–77.

Although the complaint did not accuse DoubleClick by name,

Beneficial's infringement contentions asserted that Google's customers

infringed the asserted patents by the way they served advertisements

on their websites—a task for which they used DoubleClick. A883:3–

884:7, 889:25–893:6. Beneficial's infringement contentions asserted that

a website infringed the asserted patents if it included, among other things, "software that combines the advertising related data with the service related data so that it can be transmitted by the [network]." A1984. This functionality allowed the accused websites to provide "concurrent (i.e. simultaneous or at the same time) display of a service representation and an advertising presentation." A1984. Referring to all of the accused Google customers, Beneficial asserted that "[e]ach of the web portals and websites owned or operated by Defendants has software that combines data in this fashion." A1985. DoubleClick provided the functionality that allowed the accused websites to serve advertisements in that allegedly infringing manner. A961:17–962:12, 1054:6–12.

Beneficial's infringement contentions explained in more detail how individual defendants infringed specific claims of the asserted patents. For example, independent claim 1 of the '943 patent recites a method of advertising on the Internet, wherein a user requests access to information for an interactive service, the website responds by displaying presentations, and advertising presentations are displayed on at least a portion of the user's computer screen during those display

14

presentations. A1731–1732. To accomplish these steps, a website must include "programmatic elements" for combining the "information for the interactive service" with "advertising related information." A1731–1732. According to Beneficial's infringement contentions, Google customer AutoTrader.com infringed claim 1 as follows:

> Defendant Autotrader.com's website generates an HTML data file by combining advertising related information with service related information. When the website responds to a request from a user the website transmits an HTML document that will be transformed by the user's computer into a web page. That HTML document includes portions that will result in the display of advertising on the web page, and portions that will result in the display of a service. Before transmitting that HTML document, the website uses a computer process to create that document. That process includes receiving data related to one or more advertising presentations, receiving data related to a service representation, and combining these into an HTML document. Before the Autotrader.com website transmits the HTML document that is displayed as a web page on the user's browser, the website combines data related to the text that represents the services offered with data that is related to the advertisements that are presented with the service.

A2039–2040. Beneficial's infringement allegations against the other Google customers were similar. A1905–2150.

Beneficial's infringement contentions thus accused Google's customers based on functions carried out through the customers' use of

15

DoubleClick.[2] Moreover, Beneficial's discovery responses repeatedly confirmed its position that it was impossible to serve ads as DoubleClick does without infringing the asserted patents under Beneficial's theories. A1962–1963, 1984. Recognizing this, some of the defendants sent Google complaint letters and indemnity demands. A903:3–904:23, 1901–1904.

## C.  Google intervened, alleging that Beneficial had breached the settlement agreement by suing Google's customers for infringing the licensed patents.

To enforce its rights and protect the rights of its customers, Google intervened in Beneficial's litigation and asserted that Beneficial had breached the settlement agreement by suing Google's customers for infringing the licensed patents. The district court noted in its order allowing Google to intervene that Beneficial did not contest that "Google's ad serving technology, DoubleClick, appears to be the product at issue." A64.

One of Google's first actions upon joining the litigation was to serve discovery requests offering Beneficial one more chance to deny

---

[2] See discussion of DoubleClick features in Part III.A, above.

that its infringement allegations implicated DoubleClick. Instead, Beneficial's discovery responses confirmed that—in violation of the settlement agreement—Google's customers were being sued for using ad products that included Google's DoubleClick.

For example, Google served a set of Requests for Admission asking Beneficial to admit that its infringement allegations against each Google customer were "based, at least in part, on [the customer's] use of an advertising presentation product or service provided by Google, including but not limited to DoubleClick." A2426–2437. Beneficial's responses admitted that its contentions were "based, at least in part, on [each customer's] use of advertising presentations" and on the fact that each defendant "combines information for an interactive service with advertising related information resulting in advertising presentations being presented at the user node along with a display presentation of the service." A2426–2437. Beneficial also stated that "[w]hether the advertising presentations are served by Google, some other third party or by the Defendant itself does not change the analysis." A2426–2437. Beneficial's responses thus refused to exclude DoubleClick as an accused product.

17

Beneficial's responses to Google's interrogatories likewise reiterated Beneficial's stance that "each of the Accused Google Partners infringes the patents in suit." A2422; *see also* A2445 ("Beneficial contends that Defendants directly infringe the asserted patents.").

At the trial of Google's complaint-in-intervention, however, Beneficial attempted a complete reversal, arguing *against* direct and indirect infringement in an attempt to dodge the language of the settlement agreement. For example, and as discussed in more detail at Part V, below, Beneficial:

- disavowed its own infringement claims, arguing that they were insufficient to prove infringement by Google's customers (A847:13–848:6);

- urged that DoubleClick has numerous and substantial non-infringing uses, and introduced expert testimony purporting to establish those uses (A849:5–14, 1208:2–1220:14);

- discounted its infringement contentions on the ground that it could not have finalized its theories before the court issued its claim-construction order (A925:4–18);

- undermined its prior allegations of indirect infringement by suggesting that Google did not explicitly encourage its customers to practice every element of the patented invention (A1167:2–1169:25); and

- tried to distance itself from its previous lawsuits against Google by claiming that those suits had only accused Google's *websites* as opposed to the DoubleClick technology that the websites used for serving ads (A1337:22–1338:10).

But overall, the trial testimony left no doubt that Beneficial's infringement allegations against Google's customers covered what DoubleClick did. A890:7–891:7. And there was no dispute that Google had instructed its customers to use DoubleClick in ways that infringed the asserted patents under Beneficial's own liability theories. A981:3–984:9.

**D.    The jury found for Google, and the district court denied Beneficial's pre- and post-verdict JMOL motion.**

Both Google and Beneficial made Rule 50(a) motions for judgment as a matter of law following the close of evidence at trial. A1254:10–1275:14. For its part, Beneficial aimed to head off a finding of indirect

infringement that would trigger the license provision of the settlement agreement, arguing that there was insufficient evidence to support such a finding. The district court denied both parties' motions and allowed the jury to decide whether Beneficial had breached the settlement agreement. A1275:15–1276:1.

The jury found that Beneficial had "breach[ed] the Settlement Agreement between Beneficial and Google by bringing a lawsuit against the Accused Google Customers for infringement of the '702 and '943 patents based on their use of Google's DoubleClick product." A3. Because the district court had ruled that Google's continuing damages for that breach (its attorneys' fees) should be dealt with later, the jury awarded Google only nominal damages. A4.

Beneficial then submitted a renewed JMOL motion under Rule 50(b). A1377–1411. Beneficial argued again that there was insufficient trial evidence to support the jury's conclusion that Beneficial had breached the settlement agreement. Specifically, Beneficial argued that there was insufficient evidence of indirect infringement because DoubleClick had substantial non-infringing uses, and Beneficial also

argued that Google had not intended to encourage infringement of the asserted patent claims in full. The district court declined to overturn the jury's verdict and accordingly denied Beneficial's JMOL motion. A5–33.

Following trial, Google moved for attorneys' fees and costs under a provision of the settlement agreement providing fees and costs to the prevailing party in any action for breach of the agreement. A309. The district court granted that motion, awarding Google approximately $1.3 million in fees, costs, and expenses. A40–54.[3]

This appeal by Beneficial followed.

## IV.   SUMMARY OF THE ARGUMENT

The settlement agreement signed by Google and Beneficial in 2010 contained a license for customers who use Google's DoubleClick product in a manner that would constitute indirect infringement by Google, but for the license. The jury found that Beneficial breached that settlement agreement by bringing claims against Google's customers

---

[3] Beneficial does not dispute the amount of that award—only its liability for breaching the settlement agreement.

21

that implied indirect infringement by Google itself. Ample evidence supported the jury's verdict, for at least the following reasons.

*First*, there was sufficient evidence at trial for the jury to conclude that—under Beneficial's own theory of infringement—Google's customers had directly infringed Beneficial's asserted patents by using DoubleClick. Much of this evidence came from Beneficial itself in the form of pleadings, infringement contentions, and discovery responses accusing Google's customers of infringement. This Court has held that pleadings and discovery responses may function as party admissions and as competent evidence to establish infringement where (as here) a defendant needs to establish its own infringement to trigger a defense. *See Evans Cooling Sys., Inc. v. General Motors Corp.*, 125 F.3d 1448, 1450–51 (Fed. Cir. 1997); *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000). And statements in pleadings function as admissions, especially where (as here) they involve the application of law to fact. *See Hardy v. Johns-Manville Sales Corp.*, 851 F.2d 742, 745 (5th Cir. 1988).

The defendant customers' direct infringement formed the predicate for Google's indirect infringement. *See Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1364 (Fed. Cir. 2004) (holding that the record must show direct infringement to support a verdict of indirect infringement). The evidence of direct infringement therefore mandates affirmance if there was also sufficient evidence of *either* contributory infringement *or* inducement by Google.

**Second**, there was sufficient evidence for the jury to conclude that Google contributed to its customers' infringement of the asserted patents. Google representatives testified that Google knew that DoubleClick was designed to function in a combination that allegedly infringed Beneficial's patents. Beneficial's president testified that, under Beneficial's infringement theory, DoubleClick contributed the key functionality at the heart of the asserted patent claims. Moreover, the trial evidence proved that the DoubleClick component supplied by Google had no substantial non-infringing use under Beneficial's theory.

**Third**, there was sufficient evidence for the jury to conclude that Google had induced its customers' alleged infringement of the asserted

23

patents. The trial evidence showed that Google knew of the asserted patents as early as 2007 and 2009, when Beneficial sued Google for infringing them. Despite knowing about Beneficial's patents and infringement theories, Google continued to train its customers to use DoubleClick as part of a system that infringed the asserted patents under Beneficial's theory of the case.

## V.    ARGUMENT

Upsetting a jury's verdict by entering judgment as a matter of law is appropriate only where the court concludes that "a reasonable jury would not have a legally sufficient evidentiary basis" for its finding. FED. R. CIV. P. 50(a). This Court reviews the grant or denial of a motion for JMOL under the law of the regional circuit—in this case, the Fifth Circuit. *See SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1373 (Fed. Cir. 2013). The Fifth Circuit has held that JMOL is appropriate only if "'the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.'" *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356 (Fed. Cir. 2012) (quoting *Broussard*

24

*v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 624 (5th Cir. 2008)). "'On the other hand, if there is substantial evidence opposed to the [grant of JMOL], . . . [it] should be denied.'" *Id.* (alterations in original). When evaluating a court's JMOL ruling on appeal, "consideration is given to 'all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party.'" *Id.*

Applying that standard here requires affirmance of the jury's verdict and of the district court's denial of Beneficial's JMOL motion. As discussed below, the jury was given ample evidence to conclude that, but for the license, Google's customers would have directly infringed the asserted patents by using DoubleClick to serve ads, and that Google indirectly infringed by supplying DoubleClick. These findings, in turn, triggered the protections of the customer license in the settlement agreement and require affirmance of the jury's verdict that Beneficial breached that agreement by filing this lawsuit.

25

## A. Beneficial's own assertions provided substantial evidence that Google's customers directly infringed the asserted patents.

Beneficial breached the 2010 settlement agreement if it sued Google's customers in violation of the customer license contained in that agreement. And that license was triggered whenever Google's customers used the patented technology in a manner that "would constitute *direct* or *indirect* infringement of a claim of the Licensed Patents by [Google] but for [the] license." A306 (emphases added).

Thus the trial of Google's complaint-in-intervention concerned whether Google had committed indirect infringement—either contributory infringement or inducement of customers' infringement—under Beneficial's infringement theory. Of course, the predicate for proving indirect infringement is proving direct infringement—which meant, in this case, proving that Google's customers had committed direct infringement under Beneficial's infringement theory. *See Metabolite Labs*, 370 F.3d at 1364. The first issue in this appeal, therefore, is whether there was substantial trial evidence of this predicate fact. That evidence may be circumstantial. *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006).

26

The jury had more-than-substantial evidence from which to conclude that the use of DoubleClick by the defendant Google customers directly infringed the asserted patents under Beneficial's infringement theory. Beneficial itself supplied much of this evidence in the form of admissions and factual assertions that it made in its pleadings and in discovery materials in this and prior cases. A295, 298, 894:8–896:23, 1061:17–1066:7, 2422, 2445, 2427–2437.

Beneficial's appeal hinges on retracting and repudiating those admissions and assertions. Beneficial relies on the irrelevant principle that *the patentee* may not rely on infringement contentions and the like to establish *infringement*. Br. at 19. But that rule does not govern where the *defendant* relies on its own infringement to trigger a *defense*. This Court's case law concerning the on-sale bar is instructive. An accused infringer may invalidate a patent by showing that its own accused product was on sale more than a year before the patent's filing date. 35 U.S.C. § 102(b). To invoke this defense, the accused infringer must prove that its own product practices the patent at issue.

27

In such cases, this Court permits reliance on the patentee's own allegations and infringement contentions. For example, in *Evans Cooling*, an accused infringer invoked the on-sale bar to infringement liability, requiring it to prove that the accused product embodied the asserted patent. *See Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1450–51 (Fed. Cir. 1997). The district court granted summary judgment of invalidity, and this Court affirmed. *Id.* at 1449. This Court explained that, "[a]lthough [the defendant] bore the burden of proving that [the accused product] embodied the patented invention . . . this *burden is met by [the patentee's] allegation*, forming the sole basis for the complaint, that [the accused product] infringes." *Id.* at 1451 (emphasis added).

This Court reaffirmed the *Evans Cooling* doctrine in *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363 (Fed. Cir. 2000). In *Vanmoor*, an accused infringer obtained summary judgment of invalidity based on the on-sale bar. *Id.* at 1365. This Court held that the patentee's allegation that the accused product infringed had satisfied the defendant's burden of proving that the accused product anticipated the patent. *Id.* at 1366. This Court's holdings in *Evans Cooling* and

28

*Vanmoor* implicitly recognize the injustice in allowing a patentee to allege infringement in its affirmative case then turn around and deny its own allegations when they give rise to a defense.

Indeed, even outside the on-sale-bar context, the "general rule" is that pleadings in an action are admissible in that action "as admissions of the pleading party to the facts alleged therein." *Cont'l Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971); *see also Hardy*, 851 F.2d at 745 (same).

The Fifth Circuit has held that, where facts are disputed, even a party admission "in the nature of a legal conclusion" can be "an important factor in resolving the conflict in the evidence." *Borel v. U.S. Cas. Co.*, 233 F.2d 385, 388 (5th Cir. 1956). Although some courts have held that purely legal conclusions do not function as admissions, allegations such as Beneficial's that *apply law to fact* are binding on the party that makes them. The Federal Rules of Civil Procedure provide that admissions encompass "facts, the application of law to fact, or opinions about either." FED. R. CIV. P. 36(a)(1)(A). And the Advisory Committee Notes to Rule 36 clarify that "[a]n admission of a matter

involving the application of law to fact may, in a given case, even more clearly narrow the issues." FED. R. CIV. P. 36 advisory committee's notes.

Thus, for example, statements in pleadings admitting that an individual "was a duly authorized agent" and that his actions were taken "within the scope of his duties" have been held to be competent evidence supporting a jury verdict on those matters. *Keipfer v. Beller*, 944 F.2d 1213, 1219 (5th Cir. 1991). Indeed, the Fifth Circuit in *Keipfer* approved of a jury's reliance on pleadings as admissions even though the admissions had been successfully withdrawn on the grounds of mistake by the party who made them. *Id.* The jury in that case was entitled to consider the party's withdrawn admissions as evidence, and it was "up to them to decide what weight to give it" after assessing the credibility of the party's witnesses. *Id.*

Similarly here, Beneficial's own statements were sufficient to support a finding of direct infringement by Google's customers. Beneficial attempts to distinguish *Evans Cooling* and *Vanmoor*, claiming that those cases require the accused infringer to concede

30

infringement—something Google did not do. Br. at 23–25. But that argument mischaracterizes the case law and the trial evidence. *Evans Cooling* and its progeny do *not* require an accused infringer to concede infringement unconditionally before holding the patentee to its infringement allegations. Instead, defendants are permitted to plead in the alternative under Rule 8(e), conceding infringement *solely for purposes of their defenses* while denying infringement in general. *See Vanmoor*, 201 F.3d at 1366. Thus, Beneficial cannot overturn the jury's verdict based on the fact that Google generally denied that its licensed customers infringed. A940:13–22.

Beneficial also ignores the fact that the settlement agreement provided that Google was not required to provide an "admission of patent infringement, validity or enforceability" to obtain a license of the asserted patents. A310–311. By the same token, Google should not be forced to concede infringement in order to enforce that agreement. Moreover, Google's refusal to concede infringement overall was entirely appropriate considering that its customers were *licensed* to use DoubleClick. The Patent Act states that infringement occurs when one uses a patented invention "without authority." 35 U.S.C. § 271(a). A

license confers authority and thus precludes infringement. *See Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1364 (Fed. Cir. 2003) (holding that a licensee cannot be liable for infringing a patent). Google witness Michael Trinh testified that "if these products actually infringed, they would be licensed" and that if they didn't infringe, "there'd be no reason to sue." A897:14–898:1.

Furthermore, allowing Beneficial to run away from its own infringement allegations would render the customer license worthless. If Beneficial were correct that the jury must ignore Beneficial's infringement allegations when determining whether the license bars Beneficial's suit, the license could not bar the suit until the suit was already over and the defendants had already gone to the trouble and expense of proving their own infringement independently. The settlement's main objective of avoiding litigation over these patents would be stymied—and an infringement plaintiff would be permitted to backpedal away from its own infringement allegations in order to thwart a viable infringement defense.

When Beneficial's infringement allegations are taken into account—as the jury and the district court properly did here—it becomes immediately evident that Beneficial breached the settlement agreement the moment it sued Google's customers for using the technology that Beneficial had licensed to them. Nothing that occurred after Beneficial filed its improper lawsuit could or did cure that breach. To the contrary, Beneficial pursued litigation against several of Google's customers for years and eventually obtained settlements from them despite having signed a settlement agreement foreclosing such litigation. A898:5–11. Thus, the jury properly relied on Beneficial's own allegations—set forth in its complaint, discovery responses, and infringement contentions—to conclude that Google's customers had infringed the asserted patents, thereby triggering the protections of the customer license in the 2010 settlement agreement.

Beneficial's allegations are discussed in more detail below.

### 1.    The allegations in Beneficial's complaint were admissions that Google's customers infringed the licensed patents.

Beneficial's argument on appeal runs headlong into its own allegations against Google's customers. Seeking to sweep those previous

33

allegations under the rug, Beneficial now characterizes them as mere "legal conclusions" that cannot constitute evidence of direct infringement by Google's customers. Br. at 17. As discussed above, this Court's precedents do not allow Beneficial to retract and nullify its own allegations to defeat a meritorious infringement defense. *See Evans Cooling*, 125 F.3d at 1450–51; *Vanmoor*, 201 F.3d at 1366. Nor may Beneficial disavow the admissions it made in infringement allegations that applied law to fact. *See* FED. R. CIV. P. 36 (a)(1)(A); *Keipfer*, 944 F.2d at 1219.

Beneficial's Second Amended Complaint alleged that the named Google customers had "infringed" and would "continue to infringe" the '702 and '943 patents because those customers "use[d] . . . the patented methods" on their "websites, without a license or permission from [Beneficial]." A295, A298. The complaint listed specific websites that Beneficial accused of infringing the asserted patents, including several owned by Google's customers. A295–300. At trial, Google presented Beneficial's complaints against these customers as evidence of direct infringement. *See, e.g.*, A882:19–884:7; *see also* A1266:8–16 (district

34

court confirming admission into evidence of evidentiary admissions contained in pleadings).

The jury and district court correctly concluded that the factual statements in the complaints were evidentiary admissions proving direct infringement for purposes of this case. Beneficial now seeks to distance itself from its earlier statements by discounting them as mere legal conclusions. But the district court's JMOL denial properly applied the authorities discussed above to hold that, at a minimum, Beneficial's complaint contained a factual admission that Google's customers were using patented methods on their websites "without a license or permission from [Beneficial]." A11.

Indeed, if the key allegations in Beneficial's complaint were deemed to be mere legal conclusions, the complaint would have failed to meet minimum pleading standards. A complaint filed in federal court must plead "enough factual matter that, when taken as true, states a claim to relief that is plausible on its face." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012); *see also* FED. R. CIV. P. 8(a)(2). This Court has held that

statements like Beneficial's allegations against Google's customers satisfy this requirement for factual matter. For example, in *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282–83 (Fed. Cir. 2013), this Court held that a complaint's allegations that a defendant was "making, selling, and using [a device] embodying the patent" helped satisfy Rule 8(a)(2)'s "factual content" requirement.

Beneficial also tries to escape the effect of its allegations on the ground that they were made "on information and belief" and "without any analysis of the accused infringer's websites." Br. at 18. This argument also lacks merit. In the first place, Beneficial did *not* qualify the key allegations in its complaint as being made "on information and belief." A295, 298. Moreover, the fact that Beneficial's allegations reflected its "beliefs" does not diminish their value as admissions, because "an admission *on a matter of opinion* may facilitate proof or narrow the issues or both." FED. R. CIV. P. 36 advisory committee notes (emphasis added).

Beneficial's argument also ignores Rule 11 of the Federal Rules of Civil Procedure. That rule requires counsel to sign all court

36

submissions, thereby certifying that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the "factual contentions" in the pleadings "have evidentiary support." FED. R. CIV. P. 11(b). The rule "mandates that signers weigh their behavior against their duties as professionals, particularly their duty to the judicial system, which includes a duty to refrain from wasting its resources on frivolous or otherwise improper litigation requests." 5A WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1334 (3d ed. 2004). This Court interprets Rule 11 as requiring a patentee to conduct a pre-filing investigation before bringing a patent infringement suit and to make a reasonable effort to "determine whether the accused device satisfies each of the claim limitations." *Antonius v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1073–74 (Fed. Cir. 2002) (citing FED. R. CIV. P. 11(b)(3)).

Beneficial was required to satisfy Rule 11's reasonable-investigation requirement before suing Google's customers in 2011. And Beneficial's president testified that he did, in fact, conduct such a pre-suit investigation. He stated that he is "constantly on the Internet" and "make[s] note of websites that appear to be violating the patent."

37

A1071:11–21. Beneficial cannot disavow the conclusions that it reached—and that it asserted as the basis for a federal lawsuit against Google's customers—simply because they are no longer convenient.

### 2. Beneficial's infringement contentions and discovery responses provided additional evidence that Google's customers infringed the licensed patents.

Besides the allegations in Beneficial's complaints, the jury also considered Beneficial's discovery responses and infringement contentions. Those materials contained statements confirming Beneficial's infringement allegations against Google customers and detailing how those customers infringed under Beneficial's own theories.

Interrogatory responses are competent evidence to establish that a factual matter is undisputed. *See Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 527 n.21 (5th Cir. 2010) (holding that interrogatory responses may be used as evidence to establish an issue for summary judgment); *Kohler v. Jacobs*, 138 F.2d 440, 441 (5th Cir. 1943) ("interrogatories are in the nature of evidence, and . . . may be considered on a motion for summary judgment"). And it is well established that any matter admitted in response to a request for admission "constitutes a binding

38

judicial admission that this court must deem conclusively established." *Armour v. Knowles*, 512 F.3d 147, 154 (5th Cir. 2007).

The district court properly instructed the jury on the evidentiary value of the parties' discovery responses: "Evidence was presented to you in the form of answers to one of the party's written interrogatories . . . . You should consider the answers insofar as possible in the same way as if they were made from the witness stand." A1300:16–23. Because Beneficial "failed to object to the substance of the jury instruction[]," it has waived any arguments inconsistent with that construction. *Hobbs v. Alcoa, Inc.*, 501 F.3d 395, 397 (5th Cir. 2007).[4] Beneficial cites no authority that discovery responses cannot constitute a component of substantial evidence supporting a finding of patent infringement.

---

[4] In fact, Beneficial has doubly waived the argument by failing to properly challenge that jury instruction in its opening brief. *See United Paperworkers Int'l Union AFL-CIO, CLC v. Champion Int'l Corp.*, 908 F.2d 1252, 1255 (5th Cir. 1990) ("[A]n appellant abandons all issues not raised in its *initial* brief."); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("[A]rguments not raised in the opening brief are waived.").

Here, Beneficial's interrogatory responses stated clearly that
"each of the Accused Google Partners infringes the patents in suit."
A2422; *see also* A2445 ("Beneficial contends that Defendants directly
infringe the asserted patents."). Beneficial's RFA responses confirmed
its refusal to exclude DoubleClick from its allegations. Instead,
Beneficial stated that its allegations were based on the way Google's
customers presented ads on their websites, regardless of whether those
ads were served by Google or not. A894:8–896:23, 1061:17–1066:7,
2427–2437.

Most important, Beneficial prepared and served lengthy
infringement contentions explaining in detail how the accused websites
infringed the asserted patents under Beneficial's theory of
infringement. A1905–2379. The jury considered those contentions and
the testimony that explained them, concluding that Google's customers
had directly infringed the asserted patents. A887:17–893:6.

Beneficial now attempts to escape its earlier assertions, claiming
that its own statements are not proper evidence to establish
infringement. But Beneficial is wrong. As in *Evans Cooling* and

40

*Vanmoor*, discussed above, the factfinder in this case was entitled to rely on Beneficial's allegations and infringement contentions to find that Google's customers infringed the asserted patents by using DoubleClick. Beneficial's contentions contain detailed explanations of how Google's customers' websites practice each and every asserted claim. A1905–2379. For example, Beneficial's infringement contentions explained that its patents are infringed by any website featuring "software that combines the advertising related data with the service related data so that [the data] can be transmitted by the [network]." A1984. According to Beneficial, this patented technology represented "[t]he only practical way for a . . . website to concurrently display a service representation and an advertising presentation." A1984. Beneficial further asserted that "[e]ach of the web portals and websites owned or operated by Defendants has software that combines data in this fashion." A1985. Beneficial's infringement contentions also contained extensive analysis matching specific claim elements to features of Google's customers' websites, as discussed in Part III.B, above.

41

Although Beneficial's infringement contentions did not specifically identify Google's DoubleClick as the accused product, it was undisputed that each of the accused Google customers used DoubleClick to present ads on its websites and that Beneficial's infringement allegations encompassed and were predicated on the customers' use of DoubleClick. A884:3–23, 890:17–893:6, 961:17–962:12. Google witness Michael Trinh testified that Beneficial's broad infringement contentions described exactly "what DoubleClick did and what [Google] told [its] customers to do with DoubleClick." A890:25–891:7. Thus, Beneficial's previous statements were substantial evidence of direct infringement under its own theories.

Because there was sufficient trial evidence of direct infringement by Google customers, this Court should affirm the jury's verdict and the district court's denial of JMOL if sufficient evidence supported a finding of *either* contributory infringement *or* inducement by Google. *See* 35 U.S.C. § 271(b) & (c) (identifying two alternative and distinct bases for finding indirect infringement). As discussed below, both of those indirect-infringement theories were proved by sufficient evidence at trial.

**B.**    **Substantial evidence supported the finding that Google contributed to its customers' infringement under Beneficial's own theories, triggering the protections of the customer license in the 2010 settlement agreement.**

Google customers' use of DoubleClick was licensed under the settlement agreement because, according to Beneficial itself, it resulted in contributory infringement of the asserted patents by Google. Under 35 U.S.C. § 271(c), "[w]hoever offers to sell . . . a component of a patented . . . apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." In other words, a party contributes to infringement where (1) it "kn[ows] that the combination for which its components were especially made [is] both patented and infringing" and (2) the contributed "components have no substantial non-infringing uses." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (citation omitted). A party may satisfy the second element by making a prima facie showing that a product is "not suitable for

43

substantial non-infringing use," thus "shifting the burden of production" to its opponent. *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006).

Here, the trial evidence was sufficient to establish both elements.

### 1.    Google knowingly supplied DoubleClick to the defendant customers to use in a system that infringed, under Beneficial's theory of infringement.

As discussed above, substantial evidence supported the jury's finding that using DoubleClick on a service website infringed the asserted patents under Beneficial's theory of infringement. And Google certainly knew this.

Beneficial's allegations and discovery materials established that websites using DoubleClick satisfied the elements of the asserted claims. Trial testimony confirmed that DoubleClick performed the key functions of the patented invention as interpreted by Beneficial. Sheldon Goldberg, inventor of the asserted patents, testified that the invention dealt with "the display of an advertisement, along with website information at the same time to the user." A1075:5–11. According to Goldberg, the "distinguishing" feature of his invention

44

involved the presentation of "one webpage that has service and ad information on it" that is "combined." A1080:11–25. The jury was able to compare Goldberg's testimony and the patent language (A1192:4–1205:2) with testimony by Google's witnesses explaining DoubleClick's functions.

For example, the jury heard Jonathan Bellack, Google's director of product management for DoubleClick, testify that DoubleClick "provid[es] the plumbing" to allow websites to display ads with their content. A961:20–962:12. Mr. Bellack further testified that Google intended DoubleClick to be used "[t]o serve advertisements alongside content and services." A1054:6–12. The evidence thus established that DoubleClick supplied the functionality that caused the accused websites to infringe Beneficial's patents under Beneficial's theory of infringement.

The evidence also showed that Google knew of the '702 patent no later than 2007, when Beneficial accused Google of infringing that patent by using DoubleClick. A858:6–13, 865:1–9. In fact, Google

45

acquired this knowledge before it acquired DoubleClick (which it did in 2008). A959:7–9.

Google became aware of the '943 patent no later than 2009, when Beneficial asserted that patent against Google—again, based on the service of ads via DoubleClick. A860:5–16, 865:1–9. According to Google witness Michael Trinh, Beneficial's 2007 and 2009 lawsuits against Google involved "extensive discovery," including document exchanges and depositions of Google engineers involved with DoubleClick. A865:6–16. Google therefore knew that Beneficial took the position that its patents were infringed when DoubleClick was used to serve ads on a service website. Although Google paid Beneficial $2.45 million to settle that litigation in 2010, Google made no major changes in the way it taught its customers to use DoubleClick. A305–311, 871:12–22, 1054:24–1055:3. Based on this evidence, it was reasonable for the jury to conclude that Google knew that DoubleClick would be used in a system that was patented and infringing under Beneficial's theory (but for the license).

## 2.    DoubleClick had no substantial non-infringing uses under Beneficial's theory of infringement.

Substantial evidence showed that DoubleClick had no substantial non-infringing uses under Beneficial's theory of infringement. At trial, Google introduced evidence that 123 websites operated by Google customers infringed the asserted patents under Beneficial's own theories. Beneficial's infringement contentions explained this infringement in detail, and it was undisputed that DoubleClick provided the accused websites with the key functionality at the heart of Beneficial's claims. A1054:6–12, 1075:5–11, 1080:11–25, 1905–2379. Moreover, Google representative Michael Trinh testified that Beneficial's infringement contentions described exactly "what DoubleClick did and what [Google] told [its] customers to do with DoubleClick." A890:23–891:7.

This evidence met Google's burden to produce prima facie evidence that there was no substantial non-infringing use. The burden thus shifted to Beneficial to produce evidence establishing that some supposedly non-infringing use was common enough to be "substantial."

*See Golden Blount*, 438 F.3d at 1363–64. Beneficial tried to do that, but failed.

In response to Google's prima facie showing, Beneficial purported to identify a small number of non-infringing uses for Double Click. To the extent that these uses did not infringe the asserted patents, however, none of them qualified as "substantial." A use does not qualify as a substantial non-infringing one if it is either (1) infringing or (2) "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). Each of Beneficial's asserted non-infringing uses suffered from at least one of these defects.

> **(a)    Serving ads to users who have disabled cookies was not a substantial non-infringing use.**

According to Beneficial, the asserted patents require that information be transmitted between a user's browser and a networked node in the form of a cookie, while DoubleClick is capable of serving ads to users who have disabled cookies. Br. at 40. But a party cannot show substantial non-infringing uses merely by proving that a "user can turn off the infringing features." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321,

1330–31 (Fed. Cir. 2010). "[I]nfringement is not avoided merely because a non-infringing mode of operation is *possible*." *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1350 (Fed. Cir. 2007) (emphasis added). At most, Beneficial's trial evidence showed that this use of DoubleClick was "unusual" and "occasional," if not "far-fetched," and thus not a "substantial" non-infringing use. *Vita-Mix*, 581 F.3d at 1327.

On this point, the jury heard from Google representative Jonathan Bellack, Google's director of product management responsible for ad-serving products. A958:17–18, 960:10–25. Bellack testified that, despite his extensive experience with DoubleClick, he had "never met a DoubleClick customer who does not use cookies." A1052:5–9. In fact, he explained that disabling cookies renders many DoubleClick features unavailable, "really limit[ing] what the system can do." A1052:16–23. As a result, Google "explain[ed] [to its customers] the importance of the DoubleClick cookie," and discouraged them from deactivating it. A979:9–22. Google's expert witness, Dr. Peter Alexander, testified that, based on his experience and an analysis that he had performed, only "an extremely small percentage of users . . . disable cookies." A1111:2–13. Beneficial criticized Dr. Alexander's analysis, but its counsel

acknowledged in closing argument that it was up to the jury to "judge which one of these experts you want to believe." A1344:18–1345:4. The jury made its choice and rejected Beneficial's arguments and expert testimony. Substantial evidence supported that conclusion.

**(b)     Serving ads on a website that does not store user identification was not a substantial non-infringing use.**

Similarly, Beneficial claims that DoubleClick had substantial non-infringing uses because (1) it could serve ads on a website that did not store information used to identify a user, and (2) it could serve ads to users who had chosen not to provide such identifying information. Google does not dispute that DoubleClick *can* serve ads under these circumstances. A998:4–19. But those uses either infringed under Beneficial's theory or were unusual and therefore not substantial non-infringing uses. *Vita-Mix*, 581 F.3d at 1327; *see also z4*, 507 F.3d at 1350; *Fujitsu*, 620 F.3d at 1330–31.

Beneficial's argument about users who choose not to provide information lacks merit. Because the claim language of the '702 patent simply requires a "store for storing user identification" (A1959–1962), a website may still infringe even if users elect not to use that feature.

50

Thus, as long as the website is "reasonably capable" of storing user information, it is not a non-infringing use of DoubleClick at all, let alone a "substantial" one. *See Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001).

Websites that truly lack a store for user information would not infringe the asserted patents. But evidence at trial established that this use was "unusual" or "occasional," if not far-fetched. *Vita-Mix*, 581 F.3d at 1327. Even Sheldon Goldberg, who said he was "constantly on the Internet" searching for potential infringers (A1071:19–21), was "not aware" of "*any* website that shows advertising where the underlying web server stores no data about its user." A1087:25–1088:7 (emphasis added). Thus, there was more than enough evidence for a reasonable jury to find that this use was not substantial.

> ### (c)    Beneficial waived any claim that serving non-concurrent ads is a substantial non-infringing use—but in any event, it isn't.

Beneficial argues that a website is a non-infringing use of DoubleClick when it serves interstitial or "pop-up" ads. Beneficial's theory is these uses do not satisfy the claim requirement that the system contemporaneously combine ad-related information and service-

51

related information in the user's browser. Br. at 40. But Beneficial

waived that argument by failing to raise it in its Rule 50(a) pre-verdict

JMOL motion. A1259:20–1265:10, 1270:8–1273:9; *see i4i Ltd. P'ship v.*

*Microsoft Corp.*, 598 F.3d 831, 857 (Fed. Cir. 2010).

Even apart from waiver, ample trial evidence supported the jury's

finding that interstitial and pop-up ads were not a substantial use of

DoubleClick. Google representative Jonathan Bellack testified that

DoubleClick is "sometimes" used to serve pop-up ads, but that this

requires "specific changes to how [DoubleClick] is set up." A980. Mr.

Bellack was not aware of a single DoubleClick customer that used the

product solely to serve pop-up ads. A980:22–25. In fact, Google actively

discourages its customers from serving pop-up ads at all:

> Q. Can you describe whether DoubleClick is intended to be used for just displaying pop-up ads?
>
> A. Definitely not.
>
> Q. What does Google tell its customers about pop-ups?
>
> A. We tell them to please not show pop-ups.
>
> Q. And why is that?

> A. Users hate pop-up ads. They're really annoying, and generally counterproductive.

A981:8–16.

Moreover, Beneficial's own expert, Dr. Almeroth, admitted that DoubleClick's ability to show pop-up, pop-under, and interstitial ads "does not amount to substantial non-infringing use when it comes to Claim 67 of the '943 [patent]." A1246:4–8.

Thus, there was sufficient evidence to support the jury's finding that DoubleClick had no substantial non-infringing uses and was knowingly supplied to Google's customers for use in a system that infringed under Beneficial's infringement theory. This showing requires affirmance of the jury's finding that Google indirectly infringed the asserted patents, thereby triggering the protections of the customer license in the 2010 settlement agreement.

## C.    Substantial evidence supported the finding that Google induced its customers' infringement of the asserted patents.

Even if the evidence did not support a finding of contributory infringement, affirmance would still be required because Google

presented substantial evidence that it induced its customers'

infringement of the asserted patents under Beneficial's theories.

To succeed on this argument, Google had the burden of proving

that it "knew of the patent, knowingly induced the infringing acts, and

possessed a specific intent to encourage another's infringement of the

patent." *Vita-Mix*, 581 F.3d at 1328. Google met that burden by

submitting substantial evidence.

### 1. Google knew about the asserted patents and knowingly induced allegedly infringing acts.

Substantial trial evidence showed that Google knew about

Beneficial's patents and knowingly induced its customers' acts that,

under Beneficial's theories, infringed those patents. Google knew of the

'702 patent no later than 2007, when Beneficial filed its first suit

against Google based on DoubleClick. A858:3–13, A865:1–9. And Google

became aware of the '943 patent no later than 2009, when Beneficial

asserted that patent against Google under a similar theory. A860:5–16,

A865:1–9. Those lawsuits involved "extensive discovery" that

familiarized Google with the asserted patents and with Beneficial's

infringement theories. A865:6–15. Thus, Google knew that Beneficial

believed that its patents were infringed by using DoubleClick to serve ads on service websites.

Beneficial argues that Google did not induce infringement because Google did not expressly encourage its customers to practice every single element of the asserted claims. Br. at 42–47. But that argument relies on an improper legal standard. Inducement requires "knowledge that the induced acts constitute patent infringement." *Global–Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). The district court's jury instruction accordingly stated that Google had to show that it "actively encouraged or instructed another person on how to use a product or perform a process in a way that infringes at least one patent claim" and that Google knew "that the encouragement or instructions would result in infringement . . . ." A1316:15–1317:4. The instruction did ***not*** require Google to prove that it had expressly encouraged its customers to practice every single element of the asserted claims. Beneficial did not object to the instruction (A1284:14–1293:12) or challenge it in its opening brief, and has therefore waived arguments that the instruction set the bar too low or omitted legally mandated

requirements. *Hobbs*, 501 F.3d at 397; *United Paperworkers*, 908 F.2d at 1255; *SmithKline Beecham*, 439 F.3d at 1319.

Google presented substantial evidence that its DoubleClick product was at the heart of the systems that Beneficial accused of infringement. Mr. Goldberg, inventor of the asserted patents, testified that his invention involved "the display of an advertisement, along with website information at the same time to the user." A1075:5–11. This simultaneous combination of information was the "distinguishing" feature of his invention. A1080:11–23. Similarly, Google's witness testified that Google intended that DoubleClick be used "[t]o serve advertisements alongside content and services." A1054:6–12.

Under Beneficial's own theories, Google induced the defendant Google customers to infringe the asserted patents. The trial evidence showed that Google provided its customers with extensive training and advice on how to use DoubleClick in the manner that Beneficial alleged to infringe. For example, Mr. Trinh explained that Google wanted its customers to use DoubleClick to "select and display ads . . . on a third-

party website." A892:1–21. Mr. Bellack provided details about the steps Google took to enable its customers' accused activity.

- Google's salespeople would "meet with a publisher" and "try to understand a publisher's business and present ideas about how [DoubleClick] could be used as a good solution to their advertising business." A982:5–12.

- Once a publisher decided to use DoubleClick, Google had "employees who are technical experts on the product who [would] meet with the publishers" and "help[ ] design the ad tags and giv[e] the publishers the first example ad tags that they [could] use on their site and modify as they grow." A982:13–22.

- Google offer[ed] "classroom training" where "employees of the publisher come to a Google office" so that Google could "teach the people at the publisher who [would] be using the [DoubleClick] tool all of the features and capabilities, such as how to target ads . . . ." A982:23–983:4.

- Finally, Google "provide[ed] a very large amount of written documentation and user manuals that describe[d] all of the

features of the product in detail . . . ." A983:5–19; *see, e.g.*,
A2496, 2504–2507, 2510, 2511, 2512–2536, 2542–2546,
2547–2641, 2642–2756.

Google thus offered its customers comprehensive training that
involved all the key elements of the asserted claims as interpreted by
Beneficial. This evidence was more than enough to support the jury's
finding that Google knowingly encouraged its customers to infringe the
asserted patents under Beneficial's theory.

### 2. Google had the requisite intent to encourage infringement.

A party may rely on circumstantial evidence to show intent to
induce patent infringement. *Vita-Mix*, 581 F.3d at 1328. And the fact
that an accused inducer is "aware of [the patentee]'s infringement
contentions" is relevant to the question of intent. *Fuji Photo Film Co.,
Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377–78 (Fed. Cir. 2005). Here,
the evidence showed that Google had intimate knowledge of the
asserted patents and of Beneficial's infringement theories implicating
DoubleClick. Despite this knowledge, Google continued to supply the
DoubleClick product and to train its customers just as it did before

58

being sued by Beneficial. A305–311, 871:12–22, 1054:16–1055:3.

Google's decision to encourage its clients to use DoubleClick in a

manner that it knew Beneficial viewed as infringing provided

substantial evidence to support the jury's finding of inducement.

Beneficial's attempts to undermine this evidence are misguided.

Beneficial relies on the testimony of Google's Michael Trinh to argue

that Google could not have intended to induce infringement because it

never believed that DoubleClick infringed the asserted patents. Br. at

48–49. But Mr. Trinh's testimony does not undermine Google's

inducement arguments. The settlement agreement made clear that

Google was not required to admit infringement—direct or indirect—to

obtain the benefit of the licenses therein. A310–311. And after the

agreement was signed, Google refused to concede infringement, partly

because it had an enforceable license under the asserted patents. *See*

A897:14–898:1.

Beneficial argues that Google could not have induced infringement

because Google "believed in good faith" that Double Click did not

infringe. Br. at 33–35. This argument mischaracterizes the law and the

59

trial evidence. Beneficial's cited authority does not support its argument that a good-faith belief of non-infringement would automatically defeat a finding of inducement. To the contrary, this Court has held that "a good-faith belief of non-infringement is relevant evidence that *tends to show*" that an accused infringer lacked the required intent. *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367–68 (Fed. Cir. 2013) (emphasis added). Moreover, Beneficial points to no evidence establishing that Google "believed in good faith" that DoubleClick could not serve as a component of an infringing system. Even if there were such evidence, it was up to the jury to weigh it in rendering its verdict. After all, the question of intent for purposes of induced infringement "is a factual determination particularly within the province of the trier of fact." *Fuji*, 394 F.3d at 1378 (internal quotation marks omitted). Beneficial offers no reason to upset the jury's verdict in this case.

Accordingly, there was substantial evidence to support a finding that Google induced infringement of the asserted patents. Because the jury's finding of indirect infringement was supported by substantial evidence, its verdict of contract breach must stand.

## VI.   CONCLUSION

When Beneficial wanted to harass Google's customers into litigation settlements, Beneficial was happy to assert over and over—in signed pleadings, discovery responses, and detailed infringement contentions—that using DoubleClick to serve ads on websites infringed its patents. But when Google intervened to remind Beneficial that any such "infringement" would trigger the protections of the customers' license, DoubleClick dropped its own allegations like a hot potato, pretending that they proved nothing and lacked any legal effect. Now Beneficial's appeal tries to kick that hot potato under the rug.

Fairness, common sense, and this Court's precedents dictate otherwise. Beneficial cannot be allowed to play fast and loose with the judicial system or to flout settlement obligations. This Court should affirm the jury's verdict and the trial court's order denying Beneficial's motion for judgment as a matter of law.

Respectfully submitted,

Dated: April 27, 2015          /s/ Steven A. Hirsch

Steven A. Hirsch
Christa M. Anderson
Jennifer A. Huber
John C. Bostic
Keker & Van Nest LLP
633 Battery Street
San Francisco, CA 94111
(415) 391-5400

Attorneys for Appellee
GOOGLE INC.

# United States Court of Appeals
# for the Federal Circuit

*Google Inc. v. Beneficial Innovations, Inc,* 2014-1827

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by KEKER & VAN NEST LLP, Attorneys for Appellee to print this document. I am an employee of Counsel Press.

On **April 27, 2015** counsel has authorized me to electronically file the foregoing **Brief for Appellee** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Gregory S. Dovel  (Principal Counsel)
Julien A. Adams
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066
greg@dovellaw.com
julien@dovellaw.com

David E. Rosen
Murphy Rosen LLP
100 Wilshire Blvd.
Suite 1300
Santa Monica, CA 90401
(310) 899-3300
drosen@murphyrosen.com

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

April 27, 2015    

/s/ John C. Kruesi, Jr. 
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  X  The brief contains  10,721  words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X  The brief has been prepared in a proportionally spaced typeface using  MS Word 2013  in a 14 point Century Schoolbook font or

_____ The brief has been prepared in a monospaced typeface using _____in a ___ characters per inch_____ font.

Dated: April 27, 2015                    /s/ Steven A. Hirsch _____
                                                    Steven A. Hirsch
                                                    Keker & Van Nest LLP
                                                    Attorney for Appellee
                                                    GOOGLE INC.